Bland, Chancellor.
Decreed, that this case be, and the same is hereby referred to the auditor, with directions to take an account of the estate of the late William Bowie, of Walter, which has come into the possession of the defendants William D. Bowie and John Contee as his executors or otherwise. And that the auditor also report the gross value, and annual value of the estates of Baruck Duckett, deceased, which, by his last will and testament, was devised to William Borne, of Walter, deceased, for life, with the power of appointing or disposing of the same to and amongst his children, and of the several parcels thereof which are devised or disposed of by the last will and testament of said William Bowie, of Walter, deceased. And also the gross value and the annual value of the estate of the said William Bowie, of Walter, deceased, and of the several parts or parcels thereof, which are devised by his last will and testament to and amongst his children respectively. And also the amount of the debts of the said William Bowie, of Walter, deceased, which yet remain unsatisfied. And the said auditor is also required to report the ages of the widow' and children of the said testator, and what would be proper allowances to .be made for the support of the testator’s family, and the complainant Eliza. And whether it would be to the interest and advantage of the said defendants Walter and Kitty to take under the will of their grandfather, or under the will of their father. And the auditor is required to state such other accounts, and report such other facts and circumstances in relation to the matters in issue, as may be required by either party. And shall make his report from the evidence already in the case, and such other testimony as shall be produced before him by either party, on giving the usual notice. And either party shall have liberty to take depositions of witnesses before a justice of the peace, on giving three days’ notice thereof to the adverse party, or their counsel. All equity to be reserved for final hearing.
After which, the auditor, by his report bearing date on the first day of May, 1830, says, that in obedience to this decree, and after the usual notice to all the parties, he had attended at his office, *612 and taken the depositions of witnesses, and among others, the depositions of the defendants William D. Bowie and John Cantee, who, by an order passed on the 14th of January, 1830, were allowed to be examined, subject to all just exceptions.
The auditor further says, that he had examined the proceedings, and supposes, that the real estate which was devised by Baruck Duckett to William Bowie, of Walter, and which he devised to his children, Walter and Kitty, is to be treated as parcel of ‘all the property’ devised by the testator William, to be kept together and worked by the family slaves, until Walters arrival at age, for the support of the family. He also supposes, that the negroes devised by the testator Baruck, to the younger children of the testator William, to vest on their arrival at age; and which are now retained by the executors of the testator William, as the shares of the infants Walter and Kitty, are to be treated as part of the estate of the testator William, until their arrival at age; and their profits until that period, are to be accounted for as parcel of said estate. Assuming these positions, the auditor has stated an account between the executors of William, and his estate, in which they are charged with the balance of the personal estate in their hands, at the date of their last administration account, and with the appraised values of the aforesaid land and negroes to the first day of January last; and are allowed ten per cent, commission on the amount of the inventory of the personal estate returned by them; and the additional property and profits accounted for by them, and five per cent, commission on the amount of debts collected; from which account, there appears in the hands of the executors, a balance of $12,223 48; consisting in the whole, or for the greater part, of specifics. The executor William D. Bowie, in his deposition, estimates the amount of the outstanding debts at $9,000. But no claim, except that of the plaintiff’s, which is stated and returned herewith, has been exhibited; nor have the creditors been notified to produce their claims. The auditor, is therefore, unable to make any appropriation of the balance in the hands of the executors.
The auditor further reports, that by the last will of the testator William, ‘all the property’ is devised to be kept together and worked, until his son Walter’s arrival at age, for the support of the family; and the net profits, after payment of the testator’s debts, are to be divided amongst his children, Eliza, Walter, Kitty and Richard. And after several specific legacies, ‘all the residue’ *613 of his ‘personal estate’ is bequeathed to his wife, and the before named children. The auditor supposes that the testator’s debts are charged in the first instance, upon the profits of the estate; and that as between the legatees, the personal estate is liable only in the event of a deficiency of profits to satisfy that charge. In strictness then, the accounts of the administration of the personal estate should be kept distinct from the accounts of the profits of the whole estate. But upon examination of the account passed by the executors, and of the testimony, he is satisfied, that no advantage can result from such a separation, which would compensate for its increased expense; as the amount of the testator’s debts will greatly exceed the net profits, which under the most favourable circumstances, might be derived from the estate. The auditor has, therefore, for the present, adopted the accounts as passed by the executors ; and proposes, in the future distribution of the balance in the hands of the executors, to treat the same as the residue of the testator’s personal estate.
The auditor further reports, that the real estate of the testator Baruch, which he devised to the testator William, for life, was worth, at the time of the death of the testator William, the sum of $22,433 33; and is of the same value at the present time ; and the average annual values thereof, at the aforesaid periods, are estimated at four per cent, on the gross values, or $897 33. That the devise to Kitty Bowie, includes about one hundred and fifty acres of land of said estate, which is supposed by William D. Bowie, in his deposition, to be worth $30 per acre, or $4,500, at the aforesaid periods; and the average annual values at said periods, are estimated at four per cent, on the gross values, or $180. That the devise to Walter B. Bowie, includes about three hundred acres of said estate, worth $50 per acre, $15,000, and about two hundred acres, worth $10 per acre, $2,000, making $17,000; and the annual values thereof, as aforesaid, are estimated at four per cent, or $680.
The auditor further reports, that the depositions of Samuel Sprigg, Robert Bowie, JVotley Young, and John Contee, are indefinite and unsatisfactory, as to the value of the real estate of the testator William. The deposition of William D. Bowie, is more particular, and the auditor has adopted his estimates of the value of said estate. The accompanying statements shew that the real estate of the testator William, was, at the time of his death, and is at the present time, worth $49,250; and the average annual *614 values thereof, at said periods, are estimated at four per cent, upon the gross value, or $1,970; and that the residue of the personal estate of said deceased, is worth $20,935 70. That the real estate devised to Walter B. Bowie, may be valued at $6,200; and the annual value thereof, at $248; and the personalty devised to him, is valued at $4,187 14. That the real estate devised to the complainant Eliza, may be valued at $15,750; and the annual value thereof, at $630; and the personalty devised to her, is valued at $4,187 14. That the real estate devised to Kitty Bowie, may be valued at $8,400; and the annual value thereof, at $336; and the personalty devised to her, is valued at $4,187 14. That the real estate devised to Richard D. Bowie, may be valued at $18,900; and the annual value thereof, at $756 ; and the personalty devised to him, is valued at $4,187 14.
The auditor further reports, that from the testimony, it appears, that Ann D. Bowie, the widow of the deceased, was at that time, forty-five years of age; that the complainant Eliza, was twenty-one years of age; that the defendant Walter, was eighteen years of age; that the defendant Kitty, was fourteen years of age; and that the defendant Richard, was five years of age. That a reasonable allowance for the support of the testator’s family, residing at the mansion house, would be the sum of $1,000 per annum; that the sum of $593 75 per annum, would be a reasonable allowance for the maintenance and education of the defendant Walter, who is now at a boarding school; that the sum of $468 75 per annum, would be a reasonable allowance for the maintenance and education of the defendant Kitty, who is now at a boarding school. And that the sum of $443 75 per annum, would he a reasonable allowance for the maintenance of the complainant Eliza. And as no moneys have been advanced to her since her marriage, the auditor reports, that the sum of $695 21 would be a reasonable allowance to be made to the complainant for her maintenance, from the time of her marriage to this date.
The auditor further reports, that it will be the interest and advantage of the defendants Walter and Kitty, to take under the will of their father. The testator Baruck, devised certain lands to the testator William, for life, with a power to devise it to certain of his children: and also bequeathed one-third of his negroes and stock of all sorts, to the younger children of the testator William, by his then wife. The testator William, after referring to the will of the testator Baruck, devised those lands to his son Walter, and *615 Ms daughter Kitty; and then declared, that his wife and daughters, and her son, should have a home at his mansion house, &c. The auditor understands, that the guardian for the said Walter and ■Kitty, contends, that the last will of Baruck Duckett, deceased, conferred on the testator William, a power of appointment merely; and that the said Kitty and Walter, as his appointees are seized of the absolute fee simple of the real estate of the said Baruck, freed from the charges for the payment of debts and support of the family, which the testator William, has attempted to impose thereon. The other devisees of the testator William, insist, that the said Walter and Kitty cannot claim the aforesaid real estate, in any ■other manner than as it is devised to them; or if they can and will claim the said real estate, free from the aforesaid charges, then they must abandon all other benefit which might otherwise accrue to them from the will of their father.
And, in conclusion, the auditor further reports and observes, that the question of election is then supposed to be, whether it will be more to the advantage of the said Walter and Kitty, to take an unincumbered fee simple in the said real estate, than to take the same with the charges imposed by the will of their father, and the benefits conferred on them by that will. As to the defendant Kitty, it is clearly for her interest to take under her father’s will. Her share of the real estate of her grandfather Duckett, is valued at $4,500. The real estate devised to her by her father, is valued at $8,400; and the personal estate at $4,187 14. The income which she might derive from the estate of her grandfather, is estimated at $180 per annum. Her expenses, which have been charged upon, and have been defrayed out of the profits of the aggregate estate, are estimated at $468 75 per annum. The real estate of the said Baruck Duckett, deceased, which is devised to the said Walter by his father, is valued at $17,000. Its annual income is estimated at $680. The father having died in 1826, and the charges for payment of debts, and support of the family, being limited to the said Walter’s arrival at age, which will happen in 1832, the value of those charges may be estimated at $4,080. His expenses, which are charged upon and have been defrayed out of the profits of the aggregate, are estimated at $593 75 per annum; or for the term aforesaid, at $3,562 50. The realty devised by the father, is valued at $6,200; and the personalty at $4,187 14; making the advantages to be derived from the father’s will, amount to $13,049 64. All which, is respectfully submitted.
*616 The complainants excepted to this report and. accounts of the auditor; first, because they admit the claims of Walter and Kitty Bowie to two-thirds of certain negroes devised by Baruch Duckett to the other children of William, Bowie, of Walter; second, because they assume, that said two-thirds is to be used, and their profits accounted for as parcel of said Bowie’s estate; and third, because they make no allowances to the said other children for the services of said negroes so bequeathed to them from the death of said Duckett.
The defendants excepted to so much of this report and accounts of the auditor as allow to the complainants hire for the negroes left to her by Baruch Duckett before the arrival of her brother Walter at the age of twenty-one years; because, under the will of her father, William Bowie, to which the complainants are understood to assent, and under which they make claim to all the property left thereby to the complainant Eliza, the said negroes were to be retained and worked by his executors for the benefit of the whole estate: nothing, therefore, can be claimed by the complainants for their hire; second, they except also to an allowance being made for the maintenance of said Eliza; because of the provision made for her at the mansion house; and thirdly, they except to any allowance to the complainants of any part of the profits of the estate which the defendants Walter and Kitty claim under the will of their grandfather Duckett, and the appointment by their father William Bowie, as stated in the proceedings; because the said Walter and Kitty are entitled to claim the same, and will hold the same, under the will of their grandfather; and will hold the same absolutely. The will of William Bowie, their father, does give them the same, and could not, and it is contended does not subject it to any incumbrances, charges, or conditions.
28th June, 1830.
Bland, Chancellor.
Having disposed of the previously argued cases, I this day opened the bundle of papers of this case, which was argued on the 1st instant, and find that there are several reports and papers not marked filed, which I take it for granted the parties deem important, and wish to have considered as a part of the proceedings in this case.
Upon which I would observe, that it has been the regular course of this court during the provincial government, and thence down to the present time, to mark as filed all pleadings, exhibits and papers, more especially the reports from the regular or any special auditor, as of the day on which they are lodged in or returned to the Chancery office. All bills, except such as pray for an injunc *617 tion to stay waste or proceedings at law, are required, by a statute passed in the year 1705, to be filed before a subpcena can be issued, (a) And all other pleadings must he put upon file before they can he noticed; and can only be taken off- the file by the express allowance or direction of the court. (b) So long ago as the year 1692, by a rule of the English Court of Chancery, which has been ever since followed here, every report of a master or auditor is required to be filed within four days after it is signed, or at least before any proceedings are had thereon, (c) And all depositions, exhibits, and documents, intended to be used, in any way, must be filed before they can be regarded as a part of the proceedings, or in any manner noticed by the court, (d) This course is in all cases proper and necessary to enable the register to make up a full record in an orderly and correct manner; and in many cases it is indispensably necessary as the only means of so conclusively fixing dates as to enable the Chancellor to decide correctly. The ancient and well established course of the court must be in every particular punctually observed. The Chancellor has often explained and complained as to this matter; yet he is satisfied, that, in this instance, there has been no intentional departure from the proper course.
Whereupon it is Ordered, that this case stand over, and after such of the now loose papers shall have been marked filed as the parties may think proper to have put upon the record, that the register return the bundle to the Chancellor.
After which the report of the auditor, with the depositions and *618 documents by which it was accompanied, were severally marked filed as of the 7th of May, 1830, and the case was thereupon again submitted.
10th July, 1830.
‘Bland, Chancellor.
-This case standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
The difficulties here presented arise from the different constructions given by the parties to two wills under which they claim. The first of them is that of the late Baruch Duckett, and the matter, as to it, turns upon what shall be considered as the true meaning of four of its clauses, the first of which is in these words :
£I give and devise to my son-in-law, William Bowie, of Walter, the plantation whereon I now dwell, likewise the lands called the Jeremiah and Mary, and the resurvey on the Jeremiah and Mary, and ten acres of the land purchased of Henry L. Hall, to be laid off at the north end, during his natural life only. In case the said Bowie should die before his wife Kitty, she has hereby a right to remain on, to occupy and enjoy all the aforesaid lands during her natural life. If either the aforesaid Bowie or his wife Kitty, should cut down, or suffer to be cut down the enclosed woods below my dwelling-house, for cultivation, their title to cease and be void for ever. I hereby authorize the said Bowie to designate any one or more of his children by his wife Kitty, who shall have the fee simple in all the aforesaid lands : my will being, that the fee should pass to all or any one of them in the discretion of their father; creating this uncertainty of designation merely as a motive to good conduct in them all.’
With regard to this clause it is sufficiently clear, that William ■ had an estate for life given to him, with remainder of an interest for life to his then wife Kitty, in case she should survive him. The power given to the devisee William to designate which of his children should take after himself and their mother, cannot, it is true, be considered as enlarging his estate in any respect whatever. It is a mere power to specify the course which the fee simple should take after his death, and nothing more. But then, when contemplated with reference to the persons among whom the selection was to be made, it is as to them, almost the same as if the holder of the power had been actually vested with an absolute estate in fee simple; because, as to each of those persons, the power, in the full scope of its exercise, ranges without control from nothing to the whole. And it is allowed to be arbitrarily exercised, be *619 cause of its being committed to the hands of a parent, as a motive to good behaviour from his children.
The three following clauses of this same will must be considered together; they are in these words : CI give and bequeath to my son-in-law, William Bowie, of Walter, one-third of my negroes, The whole of my negroes to be valued by two impartial men, not related to either side, and divided into three classes, as equal in value, considering age and sex, as ean be; and then each class to be distributed by lot. The first number giving the first ■ choice; the second number giving the second choice; and the third number giving the third choice. But in case William Bowie, of Walter, should set up a claim to any of the negroes, at either place, more than then at the Quarter, he and his wife to be barred from any right or title to my real estate. Also, one-third of my stock of all sorts, to be valued, classed, and distributed as the negroes aforesaid; likewise all my household and kitchen furniture, except what I bequeath hereafter, I give to my said son-in-law, William Bowie, of Walter.’
CI give and bequeath to my grandson, William D. Bowie, one-third of my negroes, and one-third of my stock of all sorts; all my plate; one eight-day clock; two large looking-glasses; two feather beds and their furniture.’
£I give and bequeath the other third of negroes and stock of all sorts to the rest of the children of William Bowie, of Walter, by his present wife Kitty, as they arrive at age, or marry, share and share alike. I mean the age of sixteen, for girls.’
From the terms in which these donations are made it is perfectly clear, that the legatee of neither class was to derive any advantage from the negroes thus appropriated among them, more than was expressly given. William Bowie could not have the use and profits of any more than the class which might by lot fall to him. The profits of the third given to his son William D. Bowie certainly vested in him at once; and so, too, the profits of the other third, which were awarded by lot to the rest of the children vested in them as a specific legacy.
A father is bound to maintain his infant children, if able, (e) and, therefore, nothing is ever allowed to him for that purpose out of the infants’ peculiar estate, unless upon special grounds. It *620 does not appear that William, the father, ever claimed any allowance for the maintenance of these, his infant children, out of the legacy given to them; nor has it been shewn that his fortune was not amply sufficient to maintain all his children; or that there were any special circumstances upon which he could have rested such a claim of an allowance for maintenance out of the legacy of negroes and stock given to his infant children; therefore no such allowance can be made. And as the negroes were held for them, by their father, as their natural guardian, he must be held accountable to them for their profits accordingly, (f)
By the last of these three clauses of the will of the testator Baruck, the legacy of the one-third of the negroes is given to the rest of the children as they arrive at age; that is, sixteen for girls. And consequently this one-third of the negroes vested in equal shares in each of these children, who were in being when the eldest of them reached the age designated by this testator as the point of time when the whole of that third should vest and be distributed. Before that time all these children of this testator’s daughter Kitty had come into being; and, therefore, this one-third of the negroes, with their profits so vested in them at that time, must be awarded to them accordingly, (g)
The second of these wills is, that of the late William Bowie, of Walter. There are several provisions of this will, not now necessary to be considered; but those clauses of it which have been the principal causes of involving these parties in this controversy are expressed in the following words:
‘ My father-in-law, the late Baruck Duckett, having devised his dwelling plantation to me during life, and also the land called Jeremiah and Mary, and the resurvey thereon, with power and authority to me to designate any one or more of my children by his daughter, and to devise it to them in fee at my discretion, I do' devise the same to my son Walter Baruck Bowie and my daughter Kitty, their heirs and assigns forever, in the following proportions, that is to say, to my daughter Kitty Bowie I give and devise three hundred and fifty, acres of my dwelling plantation, to be laid off in convenient and proper form at the corner of my plantation next adjoining the lands of my brother Walter and Gabriel Duvall, to *621 her, her heirs and assigns forever. And I give and devise to my said daughter, her heirs and assigns forever, one-half the lands which I own, and which were purchased of Robert Waters and - Clark.’
‘ I give and devise to my son Walter B. Bowie, his heirs and assigns forever, all the residue of the lands devised as aforesaid by Baruck Duckett, except ten acres purchased of Henry L. Hall, and all the residue of my dwelling plantation, except the three hundred and fifty acres aforesaid; the same to be bounded by a line drawn from the corner of Dr. Magill’s land to Young’s north-west corner, running nearly as the fence now stands, which is to be the dividing fence, subject, however, to the restrictions and conditions herein after expressed.’
c I give and devise to my daughter, Eliza D. Bowie, her heirs and assigns forever, all the land purchased of Mr. Contee, called Ranelagh.’
‘ I give and devise to my son William, D. Bowie, his heirs and assigns forever, ten acres of land purchased of Henry L. Hall.’
‘ It is my desire and will that my wife and daughters and her son shall have a home at my mansion house until my son Walter shall arrive to the age of twenty-one years, peaceably to be enjoyed by them without the interruption or molestation of my son Walter; and if he should make claim, and disturb them in their enjoyment of said home, then it is my will, and I do hereby declare void and of no effect, the devise to him herein before made. And it is further my will, that all the property be kept together and worked by the family slaves until my son Walter shall arrive to full age, for the support of the family; the whole of the net profits, after payment of my debts, to he equally divided between my children Eliza, Walter, Kitty and Richard.’
If a testator, by his will, appropriates an amply sufficient portion of his real estate, in a proper and accessible manner, for the payment of his debts, such an appropriation is valid, and his creditors must take it as given, and cannot have any other part of the realty sold and applied for their satisfaction. (h) With regard to the personalty, it is so generally and absolutely subject to the payment of debts, that a testator can, in no way, remove any portion of it out of the reach of his creditors. But then, as regards legatees, a part of the realty; or, as in this instance, the profits of *622 the realty may be directed to be applied to the payment of debts in aid or relief of the personalty out of which the legacies are given; in which case, at the instance of such legatees, such a testamentary appropriation may be carried into effect, but without prejudice to creditors, (i)
Here, the testator William, clearly contemplated the payment of all his debts in the first place, before his estate should, or indeed, could be distributed in the manner he prescribed. It is shewn, that he left a large amount of debts unsatisfied; and it also appears, that his executors have not yet finally settled up his estate; and that his creditors have not been called upon to bring their claims before this court for adjustment and satisfaction.
This is a bill by a legatee and devisee, to have the estate of the testator William,, distributed, in order that she may thus obtain that portion of it, to which she is entitled. This, it is manifest, cannot be effected, until the creditors of the deceased have been called in and satisfied. A legatee, by a bill of this kind, has a right to call for a final settlement of the testator’s estate; and, in order to accomplish that object, as the only means of getting his legacy clear of all incumbrance, he has a right to have his bill filed for that purpose, treated as a creditor’s bill, as regards the creditors of the testator, and to have them notified to bring in their claims. I have had occasion lately, and sufficiently to explain the reasons and grounds of my opinion upon this subject. (j) In this case, there can be no final distribution made of this estate, until after the expiration of the time allowed to the creditors to bring in their claims. And consequently, a notification to the creditors, is the first thing that must now be directed to be done.
This case has been treated in the argument, as one in which the testator William, had put his children, by his wife Kitty, to an election to take under, or in opposition to his will. ■ And I think there can be no doubt, that it is one of that description. But it is a case of election, accompanied by very peculiar circumstances. The power given by the testator Baruclc, to his son-in-law, is confined exclusively to the real estate; and as to that estate, extends only to a mere choice among certain persons; one, or some, or all of whom, were to take at all events. If the testator William, and his wife Kitty, had had only one child at the time of Kitty's death, *623 then, as there could have been no choice, the power would have been thus virtually extinguished. Such only child could not have been put to an election under such a testamentary provision, and the right to put to an election, must have rested upon general principles, independently of that power. There being in fact, however, a plurality of such children, no exercise of the power which merely gave the whole of the lands derived from the testator Baruch, to all or any of those children, could be questioned by any one of them, in opposition to the others, or in derogation of the will of their father; and therefore, the testator William, by no exercise of his power, which went no further than to dispose of the land to which it applied, among those children, could leave them any right of election.
But it will be seen by the comparative view of the actual operation of these two testamentary acts, as exhibited by the report of the auditor, that the testator William, has devised to his son and daughter, Walter and Kitty, other lands, in addition to portions of that derived from their grandfather, and has also bequeathed to each of them, a large amount of personal property ; that the testator William, speaks of the land derived from the testator Baruclc, as his, the testator William’s, dwelling plantation, and then gives to his wife and daughters, and her son, a home at his mansion house, until his son Walter should attain his full age; and directed that all the property be kept together, and worked with the family slaves; and that the profits, after the payment of his debts, be divided, &c. Here, so far as the donations of other property, not derived from the testator Baruclc, and also of a home, and the charge for payment of debts, affects the lands and slaves held under the testator Baruch, by incumbering them and their profits with a habitation right, and the payment of the debts of the testator William, or by withholding them temporarily from his children, by his wife Kitty, are directly at variance with, and go beyond a mere execution of the power given by the will of the testator Baruch, they do most manifestly put the testator William’s children, by his wife Kitty, to an election, to take under or in opposition to his will. And those of the testator William’s children, by his wife Kitty, who are now of full age, have all of them elected to take under their father’s will accordingly.
With regard to the infants who have been also put to their election, I am of opinion, that in the situation of this case, the court may, and ought to elect for them ; and that in doing so, it must be guided altogether with a view to the benefit of the infants, on a *624 consideration of all circumstances, (k) A reference has been made to the auditor, for the purpose of collecting information upon this subject; and the facts and statements reported by him, have not been questioned. From those statements, there can be no doubt, that it will be greatly for the benefit of the infants to take under the will of their father, in so far as the property given to them by their grandfather, has been embraced within the terms of the election, offered to them by the will of their father, which particularly describes the real estate, and also sufficiently specifies the negroes, as being then a part of the ‘family slaves.’ I shall, therefore, in behalf of these infants, elect that they shall take entirely under the will of their father, the late William Bowie.
But the one-third of the negroes given by the testator Baruck, upon his death, immediately vested in the rest of the, children of his daughter Kitty, to be distributed when they should arrive at age, that is, in these parties, Eliza, Walter, and Kitty. This specific legacy to them was the immediate gift of a fund, with all its produce. The testator William, as their father and natural guardian, might well take and hold these negroes for them; but in doing so he made himself accountable to them for their profits. Consequently, the amount of those profits which had accumulated in his hands, during his life-time, was a debt due from him to them, it was a part of their property in his hands. But it has been in no way disposed of by him; he has not described, or even alluded to it as a part of that mass of property, by the special disposition of which he has expressly or impliedly driven them to elect to take under or against his will. On the contrary, considering it as a debt due from him, he has, together with all others of his debts, expressly provided for its payment.
The principles of election arise out of the fact, that a party who has a right to one parcel of property, has another given to him, with an express declaration, or under circumstances which leave no room to doubt that the donor, who has disposed of both, intended he should have choice of either; but that he should not be permitted to take both of them. It is no where spoken of as arising out of the circumstance of the testator’s being a debtor to his devisee or legatee. In this case the testator William shews that he perfectly understood the extent of his power to put some of his children to an election, by the manner in which he has dis *625 posed of his property among them. He carefully describes the several parcels of property, and the various advantages between which they were to make their election; but in speaking of that property and those advantages there is not the slightest reference to the previously accumulated profits of their specific legacy of negroes then in his hands. No property has been given in lieu of those profits, or as a compensation for them; nor has any thing been placed before these parties in competition with those profits. And, therefore, it cannot be inferred that this claim for the profits of those negroes, which had been then received, and were then in hand, were intended to be embraced within the scope of that election which the testator William expected his children to make; for in relation to this doctrine of election, it certainly cannot be so applied as to spell or guess a man out of his property. (l)
In equity, where a debtor bequeaths to his creditor a legacy equal to or exceeding the amount of his debt, it may be presumed, in the absence of a contrary intention, that the legacy was meant as a satisfaction for the debt. The rule has not, however met with general approbation, and does not apply where the debt did not exist when the will was made, or where it was upon a negotiable security, which might be then in the hands of a stranger; or where the debt was due upon a current account, the amount of which was unknown to the testator, (m) Here the testator might well know that he was accountable to his children for the profits of the legacy of negroes which had been given to them by their grandfather; but there is no reason whatever to believe that he then knew the amount; or from any expression in his will, that he meant any bequest he made them should be considered as a satisfaction of a debt. On the contrary, he expressly refers to the will of the testator Baruc/c, and then distinctly indicates how far what he gave should control or modify any right they might deduce from the will of their grandfather, without the most distant allusion to any claim they had upon him, because of his having *626 received the profits of their negroes. Consequently, the legacies given by the testator William can, in no respect, be considered as a satisfaction of this claim of his children.
I am, therefore, of opinion that the one-third of the negroes given by the testator Baruck to the rest of the children of his daughter Kitty must be regarded as a specific legacy of things which passed at the time of his death; as an immediate gift of a fund with all its produce; and that, therefore, the legatees of these negroes became entitled to their profits immediately from and after the death of the testator Baruck; and their father, who held these negroes, as their guardian, must be charged with the profits of them from the time of the death of the testator Baruck down to the time of his own death, when they passed into other hands; but more especially because by his will he put these legatees to their election as to the use of these same negroes, which then remained in his possession; and under the designation of ‘the family slaves’ were a part of that property he directed to be kept together for the use of the family, (n) But in making this estimate of the amount of the profits of these negroes due to each one of these legatees, it will, of course, be recollected that no one of them can be allowed any portion of the profits after she had obtained her share of the negroes themselves.
It only remains to ascertain what the testator William meant by the home, the support, and the dividends of the rents and profits he gave to his widow and younger children. In contemplating these subjects it should be borne in mind, that a man is under a moral and legal obligation to maintain his wife and infant children. They are among his highest and most honourable duties. With regard to his wife, the legal duty fastens a lien upon his property, which may be made available after his death, in opposition to any previous act of his; her dower and distributive share, being rights of which he cannot deprive her. He may, it is true, give his property totally away from his children; but the presumption of law is, that nature is sufficiently strong to bind him to his duty, in this respect also, unless there be some cogent reasons for a different course, (o)
This testator declares, that his wife and daughters and her son, shall have a home at his mansion house. The home thus given, *627 is a local habitation, a place of residence. It is a right to have the enjoyment of a certain house, as a dwelling place. The right of habitation is confined to so much as is necessary for the habitation of him to whom it is granted, and his family. It is the donation of a privilege, so absolutely personal in its nature, that it cannot be leased or assigned to another, nor is it such an estate, as if given to several, can be separated by partition, and given to each one in severalty. The party to whom it is given, may enjoy or leave it at pleasure ; but he cannot claim compensation for it from any one, unless he has been hindered in, or driven from the enjoyment of it; of which, there being here no allegation, there need be no inquiry as to the value of this bequest to any one of these legatees. (p)
The testator William, then proceeds to direct, ‘that all the property be kept together, and worked by the family slaves, until my son Walter shall arrive to full age, for the support of the family.’ This is a provision made by a husband and a parent, for his family; and therefore, should have a construction, at least co-extensive with what his duties were, when he was alive. His family was rightfully composed of his wife and his infant children; each of whom, as such, during his life, was entitled to a reasonable and proper maintenance from him according to his means and circumstances. Hence, it is fair to presume, that he intended by these comprehensive expressions in his will, to have his property so applied, as most effectually to accord with the duties of a husband and a parent. Being satisfied that this was the general intention of this provision, I am of opinion, that the support here directed-to be given, must he such as is suitable for each legatee, having a proper regard to circumstances, and the extent of the fund so charged with their support. Therefore, with respect to the infant children, it must be construed to embrace a suitable education for each, as well as board and clothing. When a daughter marries, she ceases to be a member of her father’s family, she puts off his authority, and has no longer any claim upon him for support; therefore, in this instance, no one of these infants can have awarded to her, after her marriage, any portion of that which is here given ‘for the support of the family.’
The testator William, it is evident, intended that the property *628 he had so directed to be kept together for the support of the family, should be distributed when his son Walter came of age; and that after that, his wife and children should each be supported exclusively from what he had given to each. The charge upon the rents and profits of the realty derived from the testator Baruck, was then to cease, together with the similar charge upon the negroes, derived from the same testator. And the whole of the net profits of the property which had, until that time, been kept together, and which, after the payment of his debts, should then remain, are directed to be equally divided among his children, Bliza, Walter, Kitty and Richard. This latter bequest of the residuum of the rents and profits is sufficiently clear.
Whereupon it is Ordered, that a copy of the following notification be published in one newspaper published in the city of Annapolis, and in one newspaper published in the city of Washington, once a week for three successive weeks, before the first day of September next.
Addison and Wife,
vs. In Chancery, 10th July, 1830.
Bowie and Others,
Ordered, that the creditors of the late William Bowie, of Walter, of Prince George’s County, be, and they are hereby notified and required, to file the vouchers of their claims in the Chancery office, on or before the 10th of December next.
And it is further Ordered, that after the publication of the said notification, and the expiration of the time allowed to thq said creditors to file the vouchers of their claims, this case be, and the same is hereby referred to the auditor, with directions to state an account accordingly. And the report of the auditor, and the exceptions thereto, heretofore filed, so far as the same are at variance with any thing herein contained, are hereby overruled.
As required by this order, notice was given to the creditors of the testator William, to file the vouchers of their claims. After which, the case was taken up by the auditor, and sundry statements made and reported. Upon all which, on the petition, and with the consent of all parties, the case was referred to arbitration; in pursuance of which, the arbitrators made and returned an award, by which the case was finally closed.

 4 Ann. c. 16, s. 22; Kilty’s Rep.245 — 1714 ver Curia. Ordered and Ruled, that all bills filed in the Chancery office, be filed before subpcena issue, according to the statute of the fourth and fifth of Queen Anne, in such case made. — Chancery Proceedings, lib. P. L.fol. 84.

 Beam’s Order, 168, 240; Curzon v. De La Zouch, 1 Swan. 185.

 Beam’s Orders, 293; Eyles v. Ward, 2 P. Will. 517.—

 Beam’s Orders, 46, 110.
lli/t February, 1793. — Hanson, Chancellor. — Ordered, that hereafter, no subpcena issue on any bill or petition referring to any deed, writing or paper, as an exhibit, and praying that the same may be taken as part of the bill, until such deed, writing ©r paper be actually exhibited and filed. N. B. If a bill refer to an exhibit which is not filed, there can be no grievance in denying a subpcena, because the party has it in his power to strike out the reference, and therefore, to obtain the subpcena. [See also the revised rules of March, 1817, No. 3.]
Ennalls v. Bond. — 17th July, 1800. — Hanson, Chancellor. — A reference to papers or records, of which neither the originals nor copies are filed in the cause, are altogether improper; and no paper which is not exhibited and filed in a cause, ought to have any influence on the decision. — M. S.

 2 last. 112; Harvey v. Harvey, Barnard, C. Rep. 107; Butler v. Butler, 3 Atk. 60; Rawlins v. Goldfrop, 5 Ves. 444.

 Jackson v. Jackson, 1 Atk. 514; Hughes v. Hughes, 1 Bro. C. C. 387; Hoste v. Pratt, 3 Ves. 733; Collis v. Blackburn, 9 Ves. 470; Errington v. Chapman, 12 Ves. 20; Maberly v. Turton, 14 Ves. 500; Jervoise v. Silk, Coop. Rep. 52; 1816, ch, 203, s. 1.

 Barrington v. Tristram, 6 Ves. 345.

 3 W & M. ch. 14; Hughes v. Doulben, 2 Bro. C. C. 614; S. C. 2 Cox, 170.

 Clarke v. Ormonde, 4 Cond. Cha. Rep. 50.

 Hammond v. Hammond, ante 316.

 Gretton v. Haward, 1 Swan. 413.

 Forrester v. Cotton, 1 Eden, 532; Blake v. Bunbury, 1 Ves. jun. 524; Green v. Green, 19 Ves. 667; S. C. 2 Meriv. 93; Tibbits v. Tibbits, 4 Cond. Cha. Rep. 148 ; Hall v. Hall, 1 Bland, 130.

 Rawlins v. Powel, 1 P. Will. 298 ; Jeffs v. Wood, 2 P. Will. 130; Thomas v. Bennet, 2 P. Will. 343; Fowler v. Fowler, 3 P. Will. 353; Mathews v. Mathews, 2 Ves. 636; Richardson v. Greese, 3 Atk. 65; Hinchcliffe v. Hinchcliffe, 3 Ves. 529; Carr v. Eastbrooke, 3 Ves. 561; Wathen v. Smith, 4 Mad. 325; Partridge v. Partridge, 2 H. & J. 63; Edelen v. Dent, 2 G. & J. 185.

 Kirby v. Potter, 4 Ves. 748; Raven v. Waite, 1 Swan. 557.

 Rawlins v. Goldfrap, 5 Ves. 444; Glaister v. Hewer, 8 Ves. 206; 2 Fonb. 121.

 Co. Litt. 122, a.; Ayliffe, Civil Law, b. 3, tit. 7; Domat, b. 1, tit. 11, s. 2; Code Napole. Civil. s. 633, 634; Warfield v. Gambrill, 1 G. & J. 503.